My name is Tony Banuki. I'm here representing Rochelle Garrison's appellant in this case. This case is about what an employer must do when an employee seeks leave for an accommodation for a serious medical condition and what consequences for the employer are if they don't live up to those obligations. Now, the district court in this case granted summary judgment on each of Ms. Garrison's three claims, four claims, under the FMLA, ADA, and the Missouri Human Rights Act, and it granted summary judgment on the retaliation claims as well. I'm going to focus today in my very short amount of time on the FMLA claim and the ADA claim because I think that's the most important point, and unless the court has questions about some HRA claims or the retaliation claims, I'll leave those to the jury. So, jumping right into the FMLA issue. Under the FMLA, an employee has the right, when she has a serious medical condition, to take temporary leave under certain qualifying circumstances, and the employer is prohibited from interfering or denying her those rights. For an employee to make a primary patient case, it's admissible case, under the FMLA, for interference and denial of an FMLA right. Deaths show first that she suffered a serious medical condition, and here's the first point at which the trial court found that the record here failed on that point, and I think, as explained in our brief, effectively the district court resolved a bunch of factual The court excluded certain testimony that was not provided in discovery. Is that a part of this? That is a part of what the Governor General, the defendant in this case, is arguing, and Ms. Bell, Ms. Garrison. They're both arguing that that is wrong. The district court granted a motion to strike the evidence that, medical evidence, that by my reading of the record was never offered by Ms. Garrison in response to the summary judgment. The idea that the motion to strike was brought because there weren't medical records provided from the Family Practitioners Association before April 8, 2014. Right. Now, that's true. Those records weren't provided, but those records weren't offered in this case to support Ms. Garrison. So you're saying the exclusion of it doesn't affect this case at all? It doesn't do anything, that's right. And my reading of the court's judgment is that it didn't go as far as what the Governor General was asking, which I think the Governor General was asking the court to say, you can't consider any evidence about what her medical condition was before April 8, 2013, because she failed to provide these records. Well, a little background there, it's a failure. Did the court allow the admission of testimony other than those documents that were excluded, referencing her prior condition? It didn't really explain itself in its judgment, in my view. But I don't think it, I think it allowed those records. There's a handful of records that are in Volume 2 of our appendix, that's sealed in her medical records, dating from this family contract association, dating from April 8, 2014 forward. And the court viewed those records, I don't think it viewed them correctly or gave them, in my view, but the court did consider them and did not exclude them. That's my reading of the case. And it's those very records that provide the hook for the jury in this case, those records combined with testimony from Ms. Bell, testimony from Ms. Garrison, showing a serious medical condition. Now, what does it take to show a serious medical condition? There's a winding road to get there through the statutes and the regulations, pardon me, but the regulations show that an employee with a mental illness, a serious mental illness like Ms. Garrison is claiming here, she's claiming that she suffers from depression, anxiety, migraine headaches, and that she's received treatment for those. Counsel, is there a difference in those three, or to put it favorably to you, do you have a better case on one of the three, anxiety, migraine, depression, than the other? Or do you think they're all just lumped together and they sink and rise together? Well, Judge, in our jury system, I think the jury would be able to consider them all together, but at a minimum on depression and anxiety, well, I'm sorry, at a minimum on depression, because that pops up in these medical records that Judge Smith was talking about. The medical history portion of those medical records, the April 8th record and the May 1st records from her doctors show that she's been treated for depression, dating back to at least 2013. And that's important, because one of the elements of showing a serious medical condition is that the employee shows that she's been treated by a health care professional periodically, and that means twice in the course of a year. And so being able to show, look back in those records, that she was treated for depression and that she was prescribed Zoloft. I haven't looked specifically at the records, but isn't it anxiety that she has periodic treatment for on what they say? The doctor says anxiety and headaches and anxiety? The doctor doesn't say depression? I apologize, I didn't mean to cut you off. I think you're— I'm talking about May 13th, June 3rd, and June 16th. That's right, Your Honor. When she was hospitalized, when she was rushed to the emergency room on May 12th, that was anxiety attack. It doesn't mention depression at all, right? It does not mention it. Okay, go ahead. That does not defeat our case, however, because we have the— let me go back to explain what the elements of the serious medical condition are really quickly. So you have the treatment over the course of time, twice in a year. That's one of the elements showing a substantial medical treatment. The other is incapacity, and that means in the regulations, missing work. The evidence that shows that element is found in Ms. Bell's— well, in the record in Ms. Bell's testimony and Ms. Garrison's. Ms. Bell admitted—this is at page 205 of your appendix— that she was aware that Ms. Garrison suffered from depression, anxiety, and migraine headaches, that she was aware that Ms. Garrison had sought treatment and received treatment for those conditions, and that she was aware that Ms. Garrison had to miss work for those treatments. And that's the evidence the jury will be able to hook onto to find this first element of the— Well, counsel, I want to kind of shift gears, because I think your argument is relatively strong on serious medical condition, particularly given on the ADA that the district court found that there was a disability. But what I am concerned about is the failure to go to Matrix, particularly since her immediate supervisor told her to read the employee handbook. It's undisputed that she did not, and that she did not go to Matrix and ask for leave. That's right, Your Honor. And our contention is, except the MISA interference prompt, there's two reasons why that doesn't bar her claim here. Number one, that obligation isn't triggered until Dollar General, in this case, which is on notice that she suffers these conditions, gives her individualized notice of her eligibility for FML leave under Section 825.300B. Didn't the text do that? The May 6 text, didn't it do that? Yes, Ms. Garrison explicitly asked, what about FML leave? I mean, that gives Dollar General, Bell. I'm talking about Bell's text to her on May 6. It says, check the employee handbook. No, Your Honor. Follow the employee handbook. No, Your Honor, that's not enough to satisfy the standard. Why? What authority do you cite for that? Well, the regulation itself requires not only the eligibility notice, but also written notice of her rights and obligations individually sent to her at the time that she requested. And the cases that discuss that are Vannoy and Nicholson and the other authorities cited. The CFR doesn't say that, does it? The CFR? 29 CFR 825.302. It doesn't say that, does it? I believe under subsection C, Your Honor, employees shall provide written notice detailing specific expectations and obligations. This is the roadmap. Well, is that the handbook, though, counsel? Is that referring to the handbook C? No, Your Honor. I think that is referring to the individualized form that Dollar General can make up. A text can't do it? You're saying a text is not written? No. Well, it does not advise her of her rights and responsibilities. Doesn't that defeat the whole purpose? Because the CFRs talk about the fact that you can have an outside organization company do leave, and if you require the supervisors to provide these forms and things like that, that kind of defeats the purpose, doesn't it? No, Your Honor. I think Matrix could well do that. All Dollar General had to do when they understood that she was asking for FMLE was ask, was pass that on, have Matrix send this notice that I'm talking about that would have given her a roadmap that she would have understood what Dollar General wanted her to do. Why shouldn't that responsibility be placed on the claimant, the person seeking FMLE leave versus the supervisor? Well, the statute places the obligation for this notice on the employee. Are you sure that subsection D of what you and I were just talking about, I thought it says you can require the employee to follow procedure. That sounds like the burden is on the employee. Are we in? I'm sorry, Mike. I'm in 29 CFRA 25.302. You're in 302. Okay. Yes, it does. That says the employee has an obligation. But the position here is that 302 isn't triggered unless and until Dollar General satisfies its obligations under 300, and that didn't happen in this case. And so my time's up here. Thank you, Mr. Bonucci. I'm sorry. Ms. Coleman? May it please the Court, Gail Coleman for the Equal Employment Opportunity Commission. Under the ADA, the sole function of a reasonable accommodation is to ensure equal opportunity in the terms, conditions, or privileges of employment. In other words, a reasonable accommodation is intended solely to level the playing field. If an employee needs a reasonable accommodation and doesn't get it, that means the employer has failed to level what is an unequal playing field, leaving the employee to struggle. This, by itself, is an adverse action, and the ADA does not require any additional adverse action on top of that. This is the only interpretation that is consistent with the statute and the regulations. You say they're separate, right? I'm sorry? You say they're separate, right? What's separate? Okay, a failure to accommodate claim is separate from a discrimination claim. Is that what you're telling us? A failure to accommodate claim is a special kind of discrimination claim, which this Court has recognized in Peebles and in a series of other cases. 42 U.S.C. section 12112A prohibits discrimination in the terms, conditions, and privileges of employment. Subsection B defines discriminate through examples. All of those examples show an adverse action regarding the terms, conditions, and privileges of employment. For example, section B1 talks about segregating employees in a way that would adversely affect their opportunities or status. Section B4 talks specifically about denying equal Your time's short. Do we have two lines of cases on this or not? Only in the vaguest of ways. The cases such as Fenney, that line of cases, they purport to lay out a standard where for a reasonable accommodation claim, it appears that maybe you need some separate kind of adverse action. However, factually Which one do you think is first? Because we say the first one wins. Well, in terms of that line of cases, Fenney is first. However So which wins? Separate or the same? So there needs to be only one adverse action. The EEOC does not dispute that there's an adverse action requirement. What we say is that requirement is satisfied with the denial of a reasonable accommodation. And that line of cases that we're talking about, in those cases there actually was some kind of clear separate adverse action to look at and to talk about. There was a demotion, a constructive demotion, a transfer. So that's what the parties focused on and that's what the court focused on. This court has never squarely held that if there's nothing like that to look at, that a failure to accommodate standing alone cannot be enough. We have some both phrases. Are you familiar with the both phrases? That a plaintiff is required to establish both a prima facie case of discrimination based on disability and a failure to accommodate it. Correct. We have a few cases that say that. Well, that's correct. But to establish a prima facie case, one element is an adverse action, and we're saying you have that. Necessarily. Because, again, the only purpose of a reasonable accommodation. And I'd like to point out what the regulations say. In order to define a reasonable accommodation and therefore to understand what the statute says by saying that's a form of discrimination, the regulations have clarified that there are only three kinds of things that can ever qualify as a reasonable accommodation. Counsel, I want to ask you, I got to say that I didn't understand part of the EEOC's brief because there's some argument in there that the district court did something wrong, but the district court, from what I can tell, did exactly what you're advocating. It's treated the reasonable accommodation and the constructive discharge independently. In other words, there is that unfortunate both quote in the district court's order, which Judge Benton referred to, but I don't see any reason for believing that they weren't treated separately. That's exactly what we're arguing against. They shouldn't be treated separately. The reasonable accommodation, failing to give it is itself the adverse action. There doesn't have to be a constructive discharge. That's my point. That's exactly my point. My point is that the district court said, look, reasonable accommodation would be one way to have an adverse action and dismissed that. And then the district court went and said constructive discharge would be another way to have an adverse action and then said that there's reasons why that claim failed as well. So from my understanding, the district court, again, absent that unfortunate language about both, did exactly what the EEOC is advocating. Well, I respectfully disagree because in laying out the standard for a prima facie case, the district court said adverse action the way we talked about with Fenny and then never said but a reasonable accommodation would satisfy that. Instead, went straight into let's talk about constructive discharge. Let's talk about demotion. And that was the mistake. The court should have said, okay, if they want to use the language of Fenny, yes, you need an adverse action, but here it is if there was a failure to accommodate. Full stop. Does that answer your question? Yeah, I'm not sure I agree, but I understand your argument. Okay, thank you. I see my time is up. Thank you, Ms. Coleman. Mr. Day. May it please the Court. Your Honors, my name is Frank Day. I represent Dollar General and Sandra Bell in this lawsuit. Your Honor, the district court's order granting summary judgment should be affirmed. Counsel, would you raise your mic just a bit and the podium will go up and help us hear a little better. The district court's order granting summary judgment should be affirmed. And I will briefly address FMLA, the FMLA claim, because it was properly dismissed, both on the basis of finding that Ms. Garrison did not suffer from a serious health condition, and it was also proper because she did not properly request FMLA leave in the manner required not only by Dollar General's standard procedures that she was made aware of when she received four separate handbooks, all of which she acknowledged, and their opening brief they acknowledged that she was aware of those policies and knew what contents were contained in them. Counsel, the law seems to put some burden on the employer and operates with a position that employees may lack some sophistication in dealing with how to activate FMLA, and that if employers put on notice that the employee may be seeking it or may desire it or may be eligible for it, to take the initiative to advise the employee of how those rights are to be accessed. And so in this case, when the plaintiff says, I want vacation, I'm having trouble, I'm having a rough time, I need to take off, I'm sorry, I wish I could wait until others get back, but I just can't go right now. Can I have time off? And essentially asking that it seemed for vacation. Wasn't that enough to put the employer on notice that what the employee might actually be seeking is making a request for FMLA leave? Judge, I believe we're talking about the number of the facts that you just referenced really relate in large part to the failure to accommodate claim because the material facts that relate to the FMLA claim, and I'm not trying to avoid your argument and I will do my best. I'm not making an argument, I'm just asking a question. No, address your position, your question I should say. Judge, there is an obligation on employers, and Dollar General has fulfilled that obligation time and time again as Ms. Garrison said, she was aware of the contents of the handbook, knew what those were. When she specifically reached out to her manager and said, what about FMLA leave? She said, read the handbook. It's also undisputed that a meeting that took place later, her store manager said, call HR. The regulation we just discussed with opposing counsel exists for this very reason, and it's because, and I'm going to refer to the opening brief of Ms. Garrison's counsel, who says, the challenge before this court is great, and I'm paraphrasing, because it must navigate a complicated maze of regulations and statutes to reach the correct result when it comes to FMLA leave. This provision was adopted specifically for this scenario. The regulation was adopted for this scenario where an employee does have a burden to reach out and follow the procedures that exist, and that goal does not exist to deprive them of FMLA rights. It's to ensure that their FMLA rights are protected. We are dealing with a store manager, a frontline store manager at a retail store that's being required to administer the FMLA, which all here acknowledge is incredibly complicated. And we would not be here today if she'd picked up the phone and dialed the phone number. She said she didn't look at the handbook because she didn't have it at home. Your Honor, this case also, I know it was not from this circuit, but the Kronk case is directly on point. The Kronk v. Dollar General case is directly on point. We have an individual who was an employee of Dollar General who says, my manager told me that I couldn't take leave, and so I didn't follow these other procedures. Your Honor, I think that the law is clear on this point. There are no exceptions that can be invoked that would relieve her of that obligation. We wouldn't be here today, I contend, had she just followed that one step, which she was repeatedly told to do in her handbooks that she was given and acknowledged. The response from her store manager, read the handbook, which would have directly directed her to the correct result. Counsel, which case did you just talk about? It's Kronk v. Dollar General. It is a district court case. District court in Michigan, okay. Proceed. Your Honor, I would contend that that is a decisive issue here, because if an employee can go to their manager and raise these issues, be directed back to the company policy many times, and then shift the burden to the employer, the exception we've created to the regulation has just swallowed the rule. And I would contend, judges, that that is not what this regulation was adopted to accomplish. It was to ensure that requests for FMLA leave are not being handled by front-line managers. If a company wants to go through the expense to have specialists, it's to ensure that that complicated issue gets directed to an FMLA specialist, and Ms. Garrison did not take any of the steps necessary to do that. And these steps are minimal, and she was fully capable. Unless there are unusual circumstances. Now, are there any unusual circumstances in this case? There are no unusual circumstances. You're aware the regulation has a big unusual circumstances exception at the end. And it provides a specific example, such as the employee attempts to call the number that they're directed to, and no one is available to answer, or the voicemail box for that number is full, and the employee is incapable of reaching out to that. That's the type of exception that would not apply in this case. And even though there's many allegations in this case, and I must say that to reach the correct result with all of the allegations that have been thrown in and referred to as fact, the court would need to do a complete analysis and refer to the record to see what truly is and is not evidence. That being said, Your Honor, I do think that there are no unusual circumstances here. In Kronk, the case I referenced earlier, the employee was specifically told, We're not going to let you take leave. We're not going to let you take leave. The manager told her that twice, that she wasn't going to be allowed to take leave, but she was familiar with the procedures that she needed to follow, and she never took those steps. She never exercised any personal responsibility whatsoever to request FMLA leave, and that was dispositive to the court. As to the second prong of the FMLA analysis, serious health condition, and I would say, Your Honor, there is a distinction between the standard that applies for whether or not there's a serious health condition and whether one has a disability. Well, usually a disability is actually a higher standard because you have to show that you can't perform a certain number of daily functions. Serious health conditions just seems like a much lower standard. The one distinction is so many things after the 2008 amendments to the ADA broadened its reach, and the difference is also the FMLA specifies in very objective standards what has to be met in order for an employee to qualify for FMLA leave. For example, under the chronic conditions prong, which is the one that they mainly argued in their brief and focused on anxiety, which I thought was interesting because here today they shift and said our strongest one is depression, which is interesting. But to fall under the chronic conditions prong, you have to have treatment at least twice per year for that condition. The individual has to seek treatment twice per year for that condition, and there has to also be a period of incapacity. Well, aren't there three times she went to the doctor? May 13th, June 3rd, and June 16th? That's three, right? Your Honor, for anxiety because the conditions for which... Anxiety and headaches. Doesn't it say headaches too? No, Your Honor. I thought some of those said headaches too, anxiety and headaches. The family practice records make reference to headaches, anxiety, a lump in her breast, many other conditions. But, Your Honor, what I would say is the only time that she sought treatment, May 12th is the time frame in which she sought treatment for anxiety. That is the time frame in which she went to the ER and then she went to her primary care physician immediately after that, even though the records say, you know, seek treatment in three or four days. She was released with no restrictions, et cetera. So I would contend, Your Honor, that she doesn't meet that prong, but since I am running out of time... Well, quickly on that point, can't you just treat the three conditions sort of together? I mean, at least anxiety and depression, my understanding of having sat on a lot of these types of cases over the last eight years, is those two run together. I'm not so sure about headaches, but if she was being treated for one, then it seems to me that you just treat them together. Judge, I am confident that you've sat on many panels in which those conditions were together. What is very unique about this ADA and FMLA case is we don't have one word of testimony from a physician. Now, those are separate conditions. They do not... The existence of one does not show that there is the existence of the other. They can be co-linked, but there would need to be some evidence of record from a physician to tie those together. The fact that they co-exist, it is their burden as the plaintiff to show, if they want to contend these are considered together, they were considered together in a prior case, but where is the medical evidence in this case to show that? And I'm saying, based on the record, Judge, that it would be inappropriate for this Court to reach the legal conclusion that she had an overarching mental illness that exhibited the symptoms of both and should be treated as one. I think this comes back to the record and what it does not show, because while that's possible, maybe if she had had her physician testify, he would have said, yes, these are. But that's not the evidence before the Court. All we have is references to these in sporadic... Is there any medical evidence in the record? Is there medical evidence in the record? Yes, Your Honor. Summarize it. I'm sorry? Summarize it. The medical records that are... Especially the material parts of the medical records, there are family practice physician records who are her primary care physician, and those records summarize a history of many different things. Sinus congestion, a concern about whether she may have breast cancer. They refer to depression. They do refer to headaches, but they do not refer to... And she also has the emergency room record, which is emphasized at great lengths in her brief. But if we look at that record itself, it says she was released after one hour. She was treated for gastric reflux for her... She had chest pain, was treated for gastric reflux, released within an hour, and told to follow up as needed. And so, Your Honor, I would contend that this is a very contentious FMLA and ADA case in which we have scant medical evidence to support. I would contend that an inference can be drawn that she did not follow up and seek to call Matrix because the medical evidence, even before this court, suggests she may not have qualified. That's not necessarily relevant to this position, but with my remaining time... Yeah, I want to talk about the ADA claim, and I'm going to sort of focus you in, if possible, because there is one thing that bothers me very much about your client's position on the ADA, and that is the district court decided that it was a disability. And this exchange of text messages and the allegations could raise at least a specter. It would be an end round around the FMLA, but the specter that she was asking for a reasonable accommodation in the form of leave. Your Honor, she did have numerous conversations with her store manager in which she complained about various conditions. But what this also comes back to, and the district court was correct in focusing on what are the true established facts of... Your Honor, I'm reserved. Sorry, I'm used to being on the other side from the last one. I apologize. So, to get back to my answer to your question, the... I lost my train of thought with the yellow light. No, no, that's fine. So, on the reasonable accommodation point, I mean, a reasonable accommodation would be leave. You say, look, I need a few days off to get my life in order. I've got a serious medical condition, and it's a disability, and you're stuck with a district court's disability finding because there's no cross appeal here. Says it could potentially qualify as a disability if the summary judgment stays. Okay, Judge, so the issue is, what we have is this disability. She could have a disability based on the medical record that was presented, the ER record. That could establish that. The manager didn't know that, but she had complained about many different conditions to her manager, many different conditions over time. But what did the store manager see? She showed her showing up to work every day unimpaired. She showed her showing up, performing her job duties without limitation. She rarely missed work. And the key is getting this within the context of this court's opinion and RASC because the issue is this condition was not open, obvious, and apparent. It's a mental health condition, and she exhibited no symptoms, and this is undisputed at work. No symptoms were ever exhibited at work. Well, help me understand this. Why does that matter if she comes in and said, I've got these conditions, I've been to the hospital or whatever, I need some time off, and the district court again found that the disability goes forward? Why shouldn't we send the whole claim back and allow the whole thing to go forward based on the fact that your client did not engage in any kind of interactive process, didn't say, leave isn't possible, but we can give you time to take a nap in the back room if that helps, or something of that nature? Your Honor, my client did engage in the interactive process. The record shows that there was ongoing interaction with her about these issues from the outset. She discussed with her, she did direct her to the handbook at first. That's one form of interaction. She told her to call HR when she went over the policies with her, and I would say, Your Honor, that she was accommodated. The district court found, and they've argued, that the district court gave her off the 12th and 13th. The record also establishes that every time that Ms. Garrison asked for time off, every single time, even though she missed work rarely, it was always granted. Never once was she denied a request to miss work, except for once. And the one time she was denied the request to not be present at work was on the 14th, when the undisputed facts show that she was the only keyholder available to work that day, and without her being present, the store would have had to close. So, Your Honor, I would say there was interaction. There was accommodation in the form of each time she asked, even when she wanted to leave for no reason and didn't even provide an excuse, her store manager gave her that time off. Mr. Day, your time is expired. I apologize. I was carried away in completing my answer to the question. Your Honor, thank you very much. Pleasure to be here. Thank you. Mr. Bonucci, you used all your time, but we'll give you a minute to sum up and close. I really appreciate that, Judge. I was hoping for that. Really briefly, the matrix issue, to come back to that, the problem here for Dollar General is the second reason for interference. The fact that she was told by Bell that there was no leave of absence and she was told by Bell that she was ineligible for family medical leave. That was misinformation. At least the jury could find that, and that interfered with her ability to exercise her rights under the FMLA. That gets around the matrix issue, in our view, and presents a question for the jury on whether Dollar General interfered with her rights under the FMLA in this case. The question of whether it's disputed or not can be found in the appendix 233 and 234. She wasn't asking for vacation. She was just doing that in this instance because that was all that was left to her. She was told there was no leave of absence available. She was told that she was not eligible for FMLA. She was trying to get her time to get herself better. We ask the court to reverse the trial court's summary judgment in this case. Thank you very much, Your Honor. Thank you, Mr. Day. Excuse me, Mr. Bonucci. Thank you also, Mr. Day and Ms. Coleman. We appreciate all counsel's presentations to the court today, and we'll take the case under advisement.